## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ALEXIS CROSBY** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **CAUSE NO. 1:09CV14 LG-RHW** |
| | § | |
| **PREMIER ENTERTAINMENT** | § | |
| **BILOXI, LLC, d/b/a HARD ROCK** | § | |
| **HOTEL AND CASINO BILOXI** | § | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER GRANTING IN
### PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the Motion [63] for Summary Judgment filed by

Defendant Premier Entertainment Biloxi, LLC, d/b/a Hard Rock Hotel and Casino

Biloxi. Plaintiff Alexis Crosby has filed a response, and the Hard Rock has replied.

After due consideration of the submissions and the relevant law, the Court finds no

question of material fact for the jury in regard to the race discrimination and

retaliation claims. The Motion will be granted to that extent and those claims

dismissed. The Court finds a question of material fact as to the hostile work

environment claim, and therefore the Motion will be denied in that regard.

FACTS AND PROCEDURAL HISTORY

Crosby, a female African-American, worked the graveyard shift as a cage cashier

at the Hard Rock for almost two months in 2007. She complained to Hard Rock

Human Resources when her first supervisor, Tara Bennett, made sexually explicit

comments to the staff. She also alleged that Tara Bennett allowed Caucasian

employees certain privileges denied African-American employees, such as taking "early

outs" and performing cashier duties at different stations. She further alleged that

certain co-workers used the word "nigger" to describe the behavior of some Caucasian casino guests, and made references to an "oreo" and "chocolate milk swirl" to describe the Caucasian and African-Americans working at the cashier windows.   After investigating these and other complaints, Human Resources personnel decided to terminate Tara Bennett's employment.   All employees in Crosby's area were then required to attend a training session on August 9 to review the Hard Rock's harassment and discrimination policies.   Crosby did not attend this session.

Crosby's new supervisor, Linda Bennett, noted a number of instances of Crosby failing to attend to her cashier terminal when on duty.   Then on August 13, Linda Bennett presented Crosby with a disciplinary form documenting Crosby's absences or late arrivals at work.   Crosby refused to sign the form, but requested that she be given a copy of it.   Not knowing whether she could give Crosby a copy of the unsigned form, Linda Bennett told Crosby to wait until the end of her shift, when Human Resources personnel would be in the office.   Because Crosby continued to be uncooperative, Bennett asked her own supervisor for guidance, and they decided that Crosby should be asked to leave for the evening.   When Crosby showed resistance to leaving, Linda Bennett called security to escort Crosby out of the cage area.

Crosby returned for her shift the next day, but Bennett once again observed that she would not attend to her assigned terminal.   The swing shift supervisor was also present and observed Crosby

> spend very little time in her window and most of her time talking with the other cashiers.   Crosby walked to the chip vault area several times knowing that there was only two other cashiers.   On a couple occasions

she and another cashier would go to the chip vault area to talk to the bankers leaving the other cashier by herself.

Pl. Resp. Ex. 3, ECF No. 69-3. When Bennett asked Crosby why she was not at her terminal - if there was something she needed - Crosby at first did not reply. She then told Bennett, "When I need something, I'll let you know." This response was judged to be sarcastic, and resulted in another disciplinary write-up, which Crosby refused to sign. Crosby was suspended pending investigation and sent home.

Crosby apparently then called Jimmy McGinniss, the Director of Cage and Credit, at 3:48 a.m. She requested that he reverse the decision to send her home, "explaining how she felt it was a bad environment in the cage and she couldn't work under such conditions, that Linda was Tara Bennett's relative and that this was retaliation. She would take it to 'higher authority' and that I might lose my job." Pl. Resp. Ex. 1, ECF No. 69-1. McGinnis's statement describes how he,

> explained to her that Linda was not related to Tara, we had conducted a meeting on Thursday, August 9, 2007 with grave shift and Human Resources and made a commitment to improve the environment on grave yard. Changes had been made and unfortunately she had not been able to attend this important meeting. I also mentioned that I had worked late into the morning hours on Saturday and Sunday in order to speak to the few individuals that had missed the meeting. I had been hoping to meet with her, but failed to, as she called in both weekend nights.

McGinniss declined to do anything until he was in the office and could look into Crosby's situation. *Id*. Hard Rock Human Resources personnel concluded their investigation later that day, and Crosby was terminated for insubordination.

Crosby filed a charge of discrimination against the Hard Rock alleging that she was subjected to a racially hostile working environment. She stated that,

> White employees referred to Black employees as "niggers" and "oreos." Although the Black employees complained to Tara Bennett, Manager, no action was taken. Because I complained about the use of racial slurs, I was disciplined, accused of stealing, and my employment terminated. Linda Bennett, a relative of Tara Bennett, is the person who took retaliatory actions against me.

Am. Compl. Ex., ECF No. 3-2. She attached a longer narrative on a separate page describing how a Vice President of Human Resources and Linda Bennett worked together to retaliate against Crosby for Tara Bennett's termination. She insisted that that she did not speak to Linda Bennett sarcastically.

The EEOC found that the evidence supported Crosby's allegations of race discrimination and retaliation, but did not obtain a settlement with the Hard Rock. Crosby filed this suit within 90 days of receipt of the EEOC's notice of right to sue.

The allegations of Crosby's Amended Complaint expand on the EEOC charge to include an allegation that "extension cords (covered in black tape) were placed on the floor and black employees were forbidden to cross over the extension cord line." Am. Compl. 2 (¶9b). She also alleges that "Management and Human Resources told the complaining employees that they should not take such conduct seriously/personally." *Id.* (¶9c).

DISCUSSION

Crosby brings claims of racial discrimination, retaliation, and hostile work environment based on race pursuant Title VII.

## I. Race Discrimination

Title VII provides that it is "an unlawful employment practice for an employer

. . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ."  42 U.S.C. § 2000e-2(a)(1).  "In the context of Title VII litigation, we recognize two types of discrimination claims: disparate treatment and disparate impact."  *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000).  "Disparate treatment refers to deliberate discrimination in the terms or conditions of employment, . . . on account of race, national origin, or gender."  *Id.*  Plaintiff's claim here is one of disparate treatment.

## a.  Direct Evidence of Discrimination

A Title VII plaintiff may establish her case by direct or circumstantial evidence. "Direct evidence is evidence which, if believed, proves the fact without inference or presumption."  *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citation omitted).  Crosby argues that she has direct evidence of discrimination, citing the co-worker comments, the Hard Rock's failure to reprimand these co-workers, and the actions of Tara Bennett in telling Crosby she was not to leave her work space and cross a black line on the floor.  None of this evidence, if believed, proves the fact of a racially discriminatory employment discharge.  Accordingly, it is not direct evidence of discrimination.

## b.  Circumstantial Evidence of Discrimination

"When plaintiff alleges disparate treatment, liability depends on whether the protected trait . . . actually motivated the employer's decision."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000).  In order to help district courts make this determination, the U.S. Supreme Court has established a burden-shifting scheme

for evaluating the claims at issue.  *See McDonnell Douglas v. Green*, 411 U.S. 792, 802-05 (1973); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 308 n.3 (5th Cir. 2004).  The order of proof proceeds as follows: (1) the plaintiff must first demonstrate a *prima facie* case of discrimination; (2) then, if the plaintiff meets her burden, the defendant must rebut this case by producing a legitimate, nondiscriminatory reason for its actions; (3) lastly, if the defendant meets its burden, the presumption disappears, and the issue becomes discrimination *vel non*.  *See Reeves*, 530 U.S. at 142.  The plaintiff can establish disparate treatment by showing that the defendant's explanation for the employment action is a pretext for discrimination.  *Id.* at 143.  In other words, the plaintiff can meet her burden by showing that "the employer's proffered explanation is unworthy of credence."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  Still, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Id.* at 253.

Because employment discrimination claims "involve nebulous questions of motivation and intent," summary judgment is generally an inappropriate tool for resolving these cases.  *Thornbrough v. Columbus & Greenville R.R.Co.*, 760 F.2d 633, 640-41 (5th Cir. 1985) (citations omitted).  However, if the plaintiff fails to establish a *prima facie* case, or if defendant presents strong evidence of a legitimate, nondiscriminatory reason for its actions, and the plaintiff is unable to counter with additional evidence of pretext, summary judgment may be properly granted.  *Bauer v. Albermarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999); *Enplanar, Inc. v. Marsh*, 11 F.3d

1284, 1295 (5th Cir. 1994).

### 1. Plaintiff's Prima Facie Case:

Crosby must prove four elements to make out a *prima facie* claim for racial discrimination: (1) that she is a member of a protected class; (2) that she was qualified for the position; (3) that she suffered an adverse employment action; and (4) was replaced by someone outside the protected class, or, in a disparate treatment case such as this one, that others similarly situated were treated more favorably. *See Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

There is no dispute that Crosby has established the first three elements of her *prima facie* case. The Hard Rock argues that Crosby has no evidence of the fourth element. Crosby's burden at the *prima facie* stage is to show that similarly situated employees were not discharged. She has made no attempt to show that any other employee remained employed by the Hard Rock despite being cited for insubordination. Thus, she does not establish the fourth *prima facie* element. Crosby fails to make a *prima facie* race discrimination case.

### 2. Hard Rock's Legitimate, Nondiscriminatory Reason

If Crosby had established a *prima facie* case, she nevertheless would be unable to show that she was terminated because of her race. Hard Rock provides evidence that Crosby was terminated because she was insubordinate. This is a legitimate, nondiscriminatory reason for her termination. *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 167-68 (5th Cir. 1999) ("The failure of a subordinate to follow the direct order of a supervisor is a legitimate nondiscriminatory reason for

discharging that employee.").

### 3. Evidence of Pretext

Because Hard Rock can articulate a legitimate, nondiscriminatory reason for terminating Crosby, she must present evidence that Hard Rock's reason for terminating her is a pretext for discrimination. She can show pretext either through evidence of disparate treatment or by showing that Hard Rock's proffered explanation is false or unworthy of credence. *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010).

Crosby argues that the Hard Rock gave a different reason for her termination to the EEOC - "failed induction period" - which is a challenge to the legitimacy of the stated reason for her discharge. However, reviewing the narrative of the Hard Rock's response to the EEOC, it is clear that it concluded that Crosby failed her induction period because it determined she had been insubordinate on at least two occasions. *See* Def. Mot. Summ. J. Ex. "M," ECF No. 63-13. The Court discerns no inconsistency in the Hard Rock's explanation for Crosby's termination.

Crosby also argues that a number of other things show pretext: 1) her co-workers' use of derogatory terms such as "oreos," "nigs" and "niggers," and Tara Bennett's use of a line to keep Crosby at her work station; 2) the fact that another African-American employee was terminated on the same day; and 3) a disciplinary write-up against Crosby was unfounded.

First, Crosby's co-worker's remarks, and her supervisor's actions, are not probative of discrimination by their employer in terminating Crosby. *Phillips v. TXU*

-8-

*Corp.*, 194 Fed. Appx. 221, 228 (5th Cir. 2006). Second, Crosby does not provide any evidence of the circumstances of the other African-American employee's termination, and this bare fact does not show that Hard Rock terminated Crosby for a discriminatory reason. Finally, the write-up determined to be unfounded had to do with Crosby's absences and/or tardys. Hard Rock Human Resources personnel voided the write-up at issue when they discovered that Crosby had not attended an orientation session, and had not signed for receipt of the Hard Rock attendance policy and handbook. Def. Mot. Summ. J. Ex. "G," ECF No. 63-7. None of this evidence raises a fact issue regarding whether Hard Rock's reason for terminating Crosby is a pretext for discrimination. Accordingly, Hard Rock is entitled to summary judgment in regard to Crosby's race discrimination claim.

## II. Hostile Work Environment

To prevail on a hostile work environment claim, a plaintiff must prove that: (1) she belonged to a protected group; (2) she was subjected to unwelcome harassment; (3) such harassment was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

> We determine whether a hostile work environment exists using a totality-of-the-circumstances test that focuses on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance.

*Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007) (ellipsis in

original) (internal citation and quotation marks omitted).    A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003).  Title VII is intended only to prohibit and prevent conduct "that is so severe [or] pervasive that it destroys a protected class member's opportunity to succeed in the workplace." *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871, 874 (5th Cir. 1999).  Title VII's overall goal of equality is not served if a claim can be maintained solely based on conduct that wounds or offends, but does not hinder an employee's performance.  *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir.1996).  It is a "demanding" standard that requires proof of severe or pervasive conduct that can be characterized as "extreme." *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998).

For the most part, the case law requires a far greater degree of harassment than the record shows here, both in terms of the frequency and the nature of the offensive communications.  Compare *Walker v. Thompson*, 214 F.3d 615, 619-22 (5th Cir.2000) (holding that the plaintiff could survive summary judgment based on evidence of years of inflammatory racial epithets, including "nigger" and "little black monkey"); with *Baker v. FedEx Ground Package Sys., Inc.*, 278 Fed. Appx. 322, 329 (5th Cir.2008) (a supervisor's comments to an African-American employee that "she did not want to work with people like" employee and that "whites rule" were not sufficiently severe to establish a race-based hostile work environment); *Turner*, 476 F.3d at 348 (holding that a supervisor's infrequent and isolated comments directed to the plaintiff about

-10-

"ghetto children" and other racially insensitive remarks did not rise to the level of severe or pervasive harassment); *Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645, 653 (8th Cir.2003) (occasional racial comments were insufficient for a hostile work environment claim). Specifically in regard to the allegations regarding "early outs," Crosby testified that she was never actually denied an "early out" in favor of a Caucasian employee, and in fact, may have been given one. Crosby Dep. 148. She was only aware of an early out being denied an African-American in favor of a Caucasian on one occasion. *Id*. at 149.

However, Tara Bennett's alleged actions of taping a line on the floor and telling only the African-American cage employees not to cross it are of a different nature. This was differential treatment based on race. Crosby has provided her own testimony and the affidavit of another African-American cage employee to support the allegations. In the Court's opinion, these allegations show harassment that is of sufficient severity to be actionable.

The Hard Rock argues that Crosby cannot establish the fifth element of a *prima facie* case because it promptly took effective remedial action when informed of Tara Bennett's actions. This element is not required when the alleged harasser is the plaintiff's supervisor, as was Tara Bennett. *LeMaire v. La. Dept. of Transp. and Dev.*, 480 F.3d 383, 393 n.2 (5th Cir. 2007). Accordingly, the Court finds that Crosby has established that there is a question of material fact for the jury in regard to her claim of hostile work environment based on race.

### III.  Retaliation

In retaliation cases, the plaintiff must first make the following *prima facie* showing: (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action.  *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 551 (5th Cir. 2009).

"An employee has engaged in protected activity when [he] has (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII."  *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372-73 (5th Cir. 1998) (citations omitted).  By reporting Tara Bennett's remarks and actions, Crosby was engaging in activity protected by Title VII.  Further, her termination is, without question, an adverse employment action.

Nevertheless, the Court does not find a causal link between the report and Crosby's termination.  When asked about the basis for her claim that she had been retaliated against, she stated that "She[1] wanted me to sign this piece of paper stating that I had eight points against me . . . .  There's no other reason as to why she did this. . . . There's no other logical reason."  Pl. Dep. 211:7-15.  This seemed unfair to Crosby because she had been told that she would not accrue points for being tardy or absent until after August 14.  *Id*. at 1-6.

---

[1]  Crosby is apparently referring to the write-up prepared on August 11, 2007 by Linda Bennett that was subsequently voided by Human Resources personnel.

She testified that another basis for her claim was her phone conversation with

Jimmy McGinnis:

> I called Jimmy and told him what had happened, and I begged to go back.
> I cried, I begged to go back to work. I needed my job real bad. And he
> told me we can't keep firing managers. You're running human resources -
> we can't keep firing managers.

Pl. Dep. 212:2-7. She further testified that McGinnis's response constituted a threat:

> Well, after you complain and after you're told that we can't keep firing
> black - we can't keep firing managers for you, then, to me, that's a threat.
> You're not going to help me. You're going to let me know that you can't
> keep firing these managers. That's a threat.

Pl. Dep. 221:17-25.

Crosby's speculation about retaliatory reasons for her termination are without

support in the record, and none of the reasons she posits have anything to do with the

fact that she complained about discrimination in the workplace. Further, her belief

that Linda Bennett wrote her up to vindicate Tara Bennett's termination, even if it

was supported by evidence, would only go to show a personal motive on the part of

Linda Bennett, rather than a motive based on Crosby's race. Furthermore, there is no

evidence that Linda Bennett was a part of the termination decision-making process,

which was handled by Human Resources personnel. Linda Bennett testified that after

she suspended Crosby on the 14th, she was not informed that Crosby would be

terminated, nor was she asked if she thought Crosby should be terminated. *See*

Bennett Dep. 89:13-22, ECF No. 63-4 p.23. Connie Mackay testified that she directed

Jimmy McGinnis to terminate Crosby. *See* Mackay Dep. 114:10-16, ECF No. 63-2 p.29.

Crosby has failed to provide evidence showing that she was terminated for any

reason other than insubordination.  *See Cain v. Blackwell*, 246 F.3d 758, 761 (5th Cir.

2001) ("Nothing in the record indicates that [plaintiff's protected activity] played any

role whatsoever in [the] decision to dismiss [plaintiff].  To the contrary, few would

question a manager's decision to terminate an employee for an insulting remark and

then for summarily leaving the manager's office.").

> Employers are sometimes forced to remove employees who are performing
> poorly, engaging in improper work conduct, or severely disrupting the
> workplace. . . . Precedent does not prevent [an employer] from removing
> such an employee simply because the employee engaged in a protected
> work activity months prior.

*Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).  Crosby

has not raised a material fact issue regarding whether the Hard Rock had a retaliatory

motive for her termination.  For these reasons, the Hard Rock is entitled to summary

judgment on Crosby's retaliation claim.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion [63] for

Summary Judgment filed by Defendant Premier Entertainment Biloxi, LLC, d/b/a

Hard Rock Hotel and Casino Biloxi is **GRANTED** in regard to Plaintiff's claims of

racial discrimination and retaliation, and **DENIED** as to the claim of hostile working

environment.

**SO ORDERED AND ADJUDGED** this the 7th day of March, 2011.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE

-14-